Birchard, J.
Two questions arise in this case:
1, Are judgments liens upon permanent leasehold estates for onoyear ?
2. Can one judgment, by a levy upon lands within ten days, obtain a preference over other judgments rendered at the same time, and levied within the year?
The solution of the first question depends upon the correctnossof an opinion of this court, reported in Loring v. Melendy, 11 Ohio, 357. The opinion alluded to, was upon a point not necessary to the determination of the cause, and not considered by all the-members of the court at the time. Hence the remark made in the case of Lessee of Boyd v. Talbert, 12 Ohio, 213, “the question whether a lease be realty or personalty,” is open. This case brings the subject fairly before us, and is the point upon which the decision must turn.
It is not doubted that at common law, leasehold estates wore but chattel interests. Upon the death of the owner, they vested in *315 the executor, or administrator, and not in the heir, and were subject, to the debts of' the decedent as chattels.
Adjudications upon these points had been so frequent that, after the reason of the rule had ceased, courts, whose office is to declare the law, not to create it, felt bound by the numerous decisions; and the common law, in this respect, was the law of Ohio, until modified by legislative enactment. Thus in Bisbee’s Lessee v. Hall, 3 Ohio 449, it was held that a lease for ninety-nine years was liable to execution as a chattel. And in Reynolds v. Commissioners of Stark County, 5 Ohio, 204, that a lease ior ninety-nine years, renewable forever, was personal ^property, which, on the owner’s decease, went to the executor. If, then, the legislation of the state had not affected the rales of the common law, the determination of the superior court was correct, for if the leasehold interest be) regarded a chattel; no lien attaches prior to a levy, and the three judgments upon which executions were issued within ten days-after the close of the term at which they were rendered, gained priority, and had a right to a pro rata division of the proceeds of the sale. The earliest statute to which our attention has been called, is the act of 1818, 2 Chase’s Stat. 1040, requiring leasehold estates to be conveyed with the same formality as estates of freehold.
Next came the act of January 29, 1821, which provides that all lands of whatever description, lying within the state, the owners of which hold their titles by the tenure of permanent leases, “shall, in eases of judgment had, and executions levied thereon, be considered as real estate.” Chase’s Stat. 1185; Swan’s Stat. 289. This act has never been repealed, but the act of March 5, 1839, Swan’s Stat. 289, has been thought to have superseded it. Section 1 provides, “that permanent leasehold estates, renewable forever, shall be subject to the same law of descent and distribution as estates in fee are, or may bo subject to; and sales thereof, upon execution, or by order of the court, shall be governed by the same laws that now, or hereafter may, govern such estates in fee.” These statutes effect important changes in the common law.
1. The act of 1821, as to judgments had, makes the leasehold estate real estate — requires courts to consider it, so far as the judgments are concerned, real estate. This is the fair construction of the language, “in all cases of judgments had, and execution» levied.”
*316 It follows, then,' that the lien of a judgment, which is given upon ■real estate, attaches to such leasehold estates, because, as to the judgment, it is to be considered real estate. So, for all purposes ■connected with the levy and sale, and of the rights, either of judgment creditor, or judgment debtor, or purchaser, in any way connected with the judgments, executions, and levies.
*Tbe language of the act of 1829 is different. It does not -direct how liens shall be regarded in reference to “judgments had,” and does not, therefore, necessarily supersede the act of 1821. The two are therefore to be regarded as being in force. Both may well stand together. The legislative intention should be gathered from a consideration of the provisions of both. Laws in pari materia should be construed together. We hold, then, that for all purposes connected with the laws regulating judgments, executions, sales, and descents, permanent leasehold estates .■are to be regarded as if they were freeholds, and not chattels.
The case of Reynolds v. Commissioners of Stark County, 5 Ohio, '204, above referred to, determined in 1832, was a bill to enforco the specific performance of a contract to make a lease ; the heirs were held to bo not the proper parties. This decision may well be reconciled with this opinion. In that case, no question arose under the act of 1821, or the acts of 1837 and 1839, and it, consequently, can contain nothing conflicting with this decision. In Murdock et al. v. Ratcliff, 7 Ohio, 123, the question was, whether the estate in land of the Miami University, held by permanent, lease, descended, on the decease of the owner, to the heir, or vested in the administrator. In pronouncing the opinion, the coutt say: “ The only statute wo find on this subject was a statute which de■clared that the tenants, or lessees, shall enjoy all the rights and •privileges which they would bo entitled to enjoy did they hold their lands in fee simple; a provision designed, in our opinion, to secure to the tenants civil and political privileges, not to change the quality of their estates.” To reconcile this decision with our construction of the act of 1821, it is only necessary to observe that the case presented no question concerning judgments and executions, and the cause was decided in 1835, before the other acts referred to were passed.
The next question arises under the act of March 1, 1831. Swan’s Stat. 467. The second section of this act gives a lien upon lands within the county, from the first day of the *term at which. *317 judgment was rendered. By section 23 of the same act, no judgment, on which execution shall not have been taken out, and levied within a year, shall operate to the prejudice of any other bona fide judgment creditor, etc. By section 4, two or more writs issued on judgments, within ten days after their rendition, have no preference to each other ; so, if delivered to the officer on the same day. All other writs have preference in the order of their delivery, provided “ that nothing herein contained shall be so-construed as to affect any preferable lien which a judgment may have upon lands,” etc.
These sections refer to liens arising both from judgments and levies. Section 2 gives the judgment a. lien on lands within the county. Section 4 gives, or rather recognizes, a lien from the time of' the levy, both upon lands and personal property. The latter regulates the lien which it creates, but provides against any interference with older or preferable liens. Section 23 creates no-lien ; it merely limits it in the given case. Let us apply the principle of the proviso in section 4 to this case. The defendants each acquired equal liens from the date of the levies made upon their-executions; but the plaintiff had a lien from the date of her judgment, which was elder, and therefore a preferable lion. Under the proviso of section 4, it would overreach the right of defendants. They are thereiore thrown back, and compelled to rely on their judgment liens created by section 2, and limited by section 23, or lose the proceeds of their sales; relying upon their judgments, they have equal liens with the plaintiff, and no more. The money should have been distributed to each of the parties pro' rata, in proportion to the amounts of their several judgments, and in failing to make this equal distribution the court below erred.
Judgment reversed.